**FILED**

MAR 1 9 2018

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ERIKA PETERMAN, | CV 17–66–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| REPUBLICAN NATIONAL COMMITTEE, | |
| Defendant. | |

Before the Court is Defendant Republican National Committee's ("RNC")
motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant
argues that this case should be dismissed because: (1) RNC's use of Plaintiff's
photograph constituted a fair use under federal copyright law; (2) Plaintiff has
failed to state a claim for intentional interference with prospective economic
advantage; and (3) Plaintiff's state law claim for intentional interference with
economic advantage is preempted by federal copyright law. For the reasons
explained below, the Court grants the motion in part and denies the motion in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Erika Peterman ("Peterman") is a photographer and is the author
and owner of the copyright in Peterman's photograph ("Work"). Defendant RNC
is a U.S. political organization responsible for developing and promoting the

Republican political platform, as well as coordinating fundraising and election strategy. RNC previously campaigned on behalf of Montana U.S. Representative Greg Gianforte in Montana's Special Election to fill its lone Congressional seat in the U.S House of Representatives in 2017.

On March 18, 2017, Peterman contracted with the Montana Democratic Party to take photographs at the annual Mansfield-Metcalf Dinner in Helena, Montana. She was asked to take photographs of Democratic Candidate Rob Quist ("Quist") who was the focus of the event. The Work depicts Quist, wearing a cattleman's hat from behind, with three bright lights in the distance. On March 21, 2017, Peterman edited and sent her photographs to the Montana Democratic Party and gave limited license to the Montana Democratic Party and Quist's campaign to use the Work. Peterman filed for registration of her Work with the U.S. Copyright Office on May 12, 2017.

On May 9, 2017, Peterman was notified that RNC had sent out mass direct mailings using her Work to negatively depict Quist. The image on the RNC mailer is a direct copy of Peterman's Work, altered with a treble clef inserted over the bottom left of the image and the text, "For Montana Conservatives, Liberal Rob Quist Can't Hit the Right Note." The back of the mailers contained standard political advertisement disclaimer language that they were paid for by RNC and were not authorized by any candidate or candidate's committee.

On May 16, 2017, Peterman filed her Complaint against RNC alleging copyright infringement and intentional interference with economic advantage based on RNC copying, using, and distributing her Work. (Doc. 1.) On September 9, 2017, RNC filed a Motion to Dismiss for Failure to State a Claim, arguing that its use of the Work constituted a fair use under federal copyright law and that Peterman failed to state a claim for intentional interference with economic advantage. (Doc. 7.) Additionally, RNC argued that Peterman's state law claim for intentional interference with economic advantage was preempted by federal copyright law. (*Id.*)

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* These facts need not be overly specific, but they must "give the defendant fair notice of what the . . . claim is and the grounds

-3-

upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), the court is generally limited to the allegations of the complaint, "which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Nonetheless, a court may dismiss a complaint if it lacks a cognizable legal theory. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). Dismissal for failure to state a claim is proper only "if it appears beyond doubt" that the non-moving party "can prove no set of facts which would entitle him to relief." *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007) (internal quotation marks and citation omitted).

The "assertion of fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, where no material facts are in dispute." *See Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 530 (9th Cir. 2008). Fair use doctrine "presents a mixed question of law and fact" that "requires a case-by-case determination whether a particular use is fair." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). However, "[i]f there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of

fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as fair use of the copyrighted work.'" *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1151 (9th Cir. 1986). While a plaintiff must plead facts sufficient to prove a justiciable cause of action, it is not necessary to plead facts that disprove fair use to survive a Rule 12(b)(6) motion to dismiss. *See Garner v. Higgins*, 2015 WL 574352, at *3 (W.D. Va. Feb. 11, 2015).

## DISCUSSION

### I.    Copyright Infringement

Peterman claims that RNC violated 17 U.S.C. § 106 by infringing her protected copyright in her Work. (Doc. 1 at 5–7.) RNC seeks dismissal of Peterman's copyright infringement claim on the basis of fair use. (Doc. 8 at 4.) To state a claim for copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright, and (2) copying of a protectable expression by the defendant. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). Under Section 501 of the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

The Copyright Act provides that the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified for that section, for purposes such as criticism, comment, news report, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. When determining whether a use constitutes a "fair use," the Copyright Act directs courts to consider: (1) the purpose and character of the use, including whether such use is of a commercial nature or for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion of the work used in relation to the work as a whole; and (4) the effect of the use on the potential market for or value of the work. *Id.*

Fair use "permits the use of copyrighted works without the copyright owner's consent under certain situations. The defense encourages and allows the development of new ideas . . . thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007). As an affirmative defense, fair use "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). The factors are "not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-

by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citations omitted).

It is undisputed by the parties that Peterman is the owner of a valid copyright to the Work. Therefore, the issue is whether RNC's use of the Work was a fair use of Peterman's copyrighted expression.

### a.    Purpose and Character of the Use

In evaluating the purpose and character of use, the Ninth Circuit looks to "whether and to what extent the new work is 'transformative.'" *Perfect 10*, 508 F.3d at 1163 (citing *Campbell*, 510 U.S. at 579). A work is "transformative" when it does not "merely supersede the objects of the original creation" but instead "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 1164. A use is transformative "only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. L.A. County Sheriff's Dep't,* 447 F.3d 769, 778 (9th Cir. 2006).

A work's separate purpose "by itself, does not necessarily create new aesthetics or a new work that alter[s] the first [work] with new expression, meaning or message." *Monge*, 688 F.3d at 1176 (quoting *Infinity Broad. Corp. v. Kirkwood,* 150 F.3d 104, 108 (2d Cir. 1998)) (citations omitted). A "difference in

purpose is not quite the same thing as transformation, and *Campbell* instructs that transformativeness is the critical inquiry under this factor." *Id.* However, making an exact copy of a protected work may be transformative provided "the copy serves a different function than the original work." *Perfect 10*, 508 F.3d at 1165; *See also Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 818–19 (9th Cir. 2002) (finding transformative use where the original purpose of the copied images was aesthetic, while the new purpose was to improve access to information).

In *Monge v. Maya Magazine, Inc.*, a magazine published six of the plaintiffs' wedding photographs by reproducing them on the cover and in a two-page spread with various bylines printed upon and around them. 688 F.3d at 1169–70. The Ninth Circuit found that such use "did not transform the photos into a new work, as in *Campbell*, or incorporate the photos as part of a broader work[.]" *Id.* at 1176. Instead, the Ninth Circuit held the magazine "left the inherent character of the images unchanged" and that such "wholesale copying sprinkled with written commentary . . . was at best minimally transformative" for a finding of fair use. *Id.*

The purpose and character of the use of the Work by RNC in a political mailing does not favor a finding of fair use at this stage since the Work's purpose remains a disputed issue of fact and RNC's use was, at best, minimally transformative. As alleged in the Complaint, RNC copied the whole of the visual

-8-

Work and merely added a few lines of text that were critical of Quist, stating "For Montana Conservatives, Liberal Rob Quist Can't Hit the Right Note" in the lower-left quadrant. (Doc. 1-3 at 1.) Absent the inclusion of a treble clef attached to the commentary, the entirety of the visual aspects of the Work remain unaltered in RNC's use.

There is no basis in the pleadings for determining the existence and extent of any purpose or transformation of the Work at this stage. RNC added commentary, which may have altered the Work with new expression. Thus, RNC's use would establish a new purpose or new function. However, Peterman's purpose for the Work is not plain on the face of the pleadings and has yet to be developed. RNC alleges the purpose and function of the Work based on the Montana Democratic Party's use of the Work and not Peterman's use of the Work. Therefore, the purpose of the Work remains a disputed issue of fact for a finding of fair use.

Further, the character of RNC's use appears to be minimally transformative. The Work was not altered from Peterman's original photograph, and instead similar to *Monge*, where the Ninth Circuit found "wholesale copying sprinkled with written commentary . . . at best minimally transformative," RNC left the inherent character of the image unchanged and only included short written commentary. Additionally, as *Monge* illustrates, RNC's separate purpose or function for the Work of criticizing Quist by itself does not necessarily create a

new work that alters the Work's expression. Separate purpose is not the same thing as transformation, which is the critical inquiry at this juncture. Therefore, because the Work's purpose remains a disputed issue of fact and the transformative character of the use appears marginal, the purpose and character of the use factor weighs against a finding of fair use at this stage.

### b.    Nature of the Copyrighted Work

In determining the nature of the copyrighted work, courts recognize that "creative works are 'closer to the core of intended copyright protection' than informational and functional works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003) (quoting *Campbell*, 510 U.S. at 586). Courts generally assess whether the original work is more creative or factual in nature and whether it was published at the time of the alleged infringement. *See Harper & Row,* 471 U.S. at 563–64. "The scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Hustler*, 796 F.2d at 1153–54; *see also Harper & Row,* 471 U.S. at 563 ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."). Depiction of newsworthy events are "informational and factual" and more likely to be the subject of fair use. *See Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (finding that video footage of police beating an

individual weighed in favor of fair use for the nature of the copyrighted work factor because of its newsworthiness).

Here, it is clear the nature of the Work as represented in the Complaint is a published photograph by Peterman artistically depicting Quist. The photograph includes elements in its framing that are not factual in nature. Instead, the Work creatively and visually develops a portrait of Quist and his candidacy, including the balance of the photograph, the illuminated cowboy hat atop Quist's head, the three stage lights in the distance, and the dark background employed. (Doc. 1-3 at 1.) Given the inclusion of these visual elements, the Work is "closer to the core of intended copyright protection" because it is more closely aligned to an artistic portrait rather than an informational or functional work, despite it being taken at a political event. Consequently, the nature of the copyrighted work factor weighs against a finding of fair use at this interval.

### c.    Amount and Substantiality of Portion Used

In assessing the amount and substantiality of portion used, courts consider not only "the quantity of the materials used" but also "their quality and importance." *Campbell*, 510 U.S. at 587. While "wholesale copying does not preclude fair use per se," copying an entire work "militates against a finding of fair use." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (quoting *Hustler*, 796 F.2d at 1155). Similarly, "the

fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row,* 471 U.S. at 565.

If the subsequent user of the work "copies only as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly,* 336 F.3d at 820–21. Accordingly, the use of an entire image may be reasonable if it serves the defendant's intended purpose. *See Perfect 10,* 508 F.3d at 1167–68 (finding use of entire image necessary to facilitate use of search engine favored neither party on amount and substantiality of portion used); *Kelly,* 336 F.3d at 821.

Here, RNC copied the entirety of Peterman's Work quantitatively and qualitatively for use in its political mailers. A side-by-side comparison of the Work and RNC's mailer shows that RNC attempted to qualitatively retain the whole of the visual aspects of the Work in order to comment on Quist's musical background as it applied to his political career. The mailer reproduces the original balance of the photograph, the illuminated cowboy hat atop Quist's head, the three stage lights in the distance, and a dark background to juxtapose its commentary with the appearance that Quist is giving a musical performance. (Doc. 1-3 at 1.) The only alteration present from the original Work is RNC's inclusion of a treble clef attached to its commentary. (*Id.*)

-12-

Consequently, both the amount and substantiality of the Work RNC used for its political mailers either weighs neutrally or against a finding of fair use. RNC used substantially all the Work quantitatively as the entirety of the Work was copied. Further, the qualitative aspects of the Work were maintained in RNC's use for its intended purpose to criticize Quist's political career in conjunction with his musical background. Given that the whole of the Work was precisely maintained quantitatively and qualitatively for RNC's use and intended purpose, this factor weighs against a finding of fair use.

### d.    Effect on the Market

In evaluating the effect on the market of a use, courts consider "whether the infringing use: (1) tends to diminish or prejudice the potential sale of the work; (2) tends to interfere with the marketability of the work; or (3) fulfills the demand for the original work." *Hustler*, 796 F.2d at 1155–56 (internal quotation marks and citations omitted). The "market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop." *Campbell*, 510 U.S. at 592. The more transformative the new work, the less likely the new work's use will affect the market for the original work. *See Kelly*, 336 F.3d at 821. Where the use "does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use."

-13-

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) (quoting *Campbell*, 510 U.S. at 591).

There is no basis in the pleadings for determining the market effect of RNC's use of the Work as it remains a disputed issue of fact. Construing the pleadings in favor of Peterman, it is uncertain whether the use of the Work in a political mailing criticizing Quist is likely to diminish the potential sale of the Work, interfere with the marketability of the Work, or fulfill the demand for the Work. The only evidence available in the pleadings about the market for the Work was that Peterman was contacted by the Montana Democratic Party to create the Work, that Peterman gave limited license to the Work to the Montana Democratic Party and the Quist campaign, and that RNC used the Work in a political mailer. (Doc. 1 at 4.)

RNC's use of the Work may have potentially prejudiced further derivative use of the Work by Peterman, however such evidence is not available on the face of the pleadings. Likewise, though RNC's use would not likely substitute for the Work, and may have served a different market function, there is no plain evidence in the pleadings to determine what effect RNC's use had on the Work. Finally, as the transformative purpose and character of the use remains a disputed issue of fact in the analysis above, it is additionally premature to determine what effect RNC's

-14-

use had on the potential market for the Work. Accordingly, a finding of fair use on the market effect of the use is premature on this factor.

Having weighed each of the fair use factors, and resolving all issues in favor of Peterman under the allegations in the Complaint, the Court finds that disputed issues of material fact remain on whether RNC's use of Peterman's Work constituted a fair use. Thus, RNC's Motion to Dismiss on Count I is denied.

## II. Intentional Interference with Prospective Economic Advantage

RNC next seeks dismissal of Peterman's intentional interference with prospective economic advantage claim. Peterman asserts that RNC's use of the Work for a use opposite than intended has caused Peterman damages and interfered with Peterman's prospective economic advantage and business relations. (Doc. 1 at 9.) To state a claim for intentional interference with prospective economic advantage, a plaintiff must adequately plead that the defendant's acts: "(1) are intentional and willful; (2) are calculated to cause damage to the plaintiff's business; (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss." *Victory Ins. Co. v. Montana State Fund*, 344 P.3d 977, 980 (Mont. 2015) (citing *Maloney v. Home and Inv. Ctr., Inc.*, 994 P.2d 1124, 1132 (Mont. 2000)).

The Copyright Act preempts state laws that regulate in the area of copyright. 17 U.S.C. § 301(a). "All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." *Id.*; *see Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015) ("[T]he [exclusive] rights protected under the Copyright Act include the rights of reproduction, preparation of derivative works, distribution, and display.") (quoting *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005)). "Copyright preemption is both explicit and broad: 17 U.S.C. § 301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act." *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F.Supp.3d 1052, 1069 (N.D. Cal. 2016) (quoting *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992)).

In determining whether a state law claim is preempted by the Copyright Act, the Ninth Circuit considers: (1) whether the content of the protected right falls within the subject matter of copyright; and (2) whether the right asserted under state law is "equivalent to the exclusive rights contained in Section 106 of the Copyright Act." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008). "Copyright law does not preempt state laws with respect to

-16-

'activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106.'" *Id.* (quoting 17 U.S.C. § 301(b)(3)).

In evaluating a plaintiff's state law claims, to the extent they "rely solely on defendant's use of copyrighted material—that is, the reproduction, performance, distribution, or display of the work—the claims are preempted." *Sweet People Apparel, Inc. v. Louis Grp., Inc.*, 2013 WL 12131735, at *6 (C.D. Cal. Jan. 31, 2013). Section 301(a) reflects a Congressional intent "that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law . . . should be litigated only as federal copyright claims." *Id.* (citing *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1122 (N.D. Cal. 2001).

To avoid preemption, the state law claim must include "an 'extra element' that makes the right asserted *qualitatively different* from those protected under the Copyright Act[.]" *Altera Corp.*, 424 F.3d at 1089 (emphasis added). The "extra element" must effectively change the claim "so that it is qualitatively different from a copyright infringement claim." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993) (citations omitted); *see also Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (rejecting that loss of business from sale of plaintiff's copyrighted work was

-17-

an additional element to intentional interference with prospective economic relations claim because "federal copyright laws already protect the exclusive right of distribution.").

Whether federal copyright law preempts a state law claim "therefore depends on whether the asserted right is qualitatively different than those protected by the Copyright Act." *Media.net*, 156 F. Supp. 3d at 1070. The Second Circuit provides persuasive authority that the rights protected by the Copyright Act are synonymous to those asserted in state law claims involving tortious interference because "[i]n both cases, it is the act of unauthorized publication which causes the violation. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element." *Harper & Row Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds,* 471 U.S. 539 (1985). Thus, to survive preemption, the "state claim must have an extra element which changes the *nature* of action." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006) (quoting *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987)) (emphasis added).

Peterman's intentional interference with prospective economic advantage claim is preempted under federal copyright law as it asserts rights under state law that are derivative of her copyright infringement claim. Under the Ninth Circuit's

framework in *Sybersound*, Peterman's state claim is preempted because the content of the asserted right under state law falls within the subject matter of copyright, and the right asserted under state law is equivalent to the exclusive rights contained in federal copyright law. Peterman's claim is supported solely on RNC's alleged infringing use of the Work, a work protected by federal copyright law. Further, the state law claim's strict reliance on the infringing use of Peterman's Work as support for the action is equivalent to the exclusive rights granted under federal copyright law. Peterman's state law claim is therefore preempted because of its dependence on RNC's use of the Work, a claim already secured by federal copyright law.

Further, Peterman's intentional interference with prospective economic advantage claim is predicated on RNC's unauthorized use of her Work in violation of her copyright, and as a result, is not "qualitatively different" from Peterman's copyright infringement claim. Peterman potentially claims an "extra element" as the potential loss of business as a result of RNC's use of the Work during a time when the Work had special and increased value. However, Peterman's claim does not assert an extra element that fundamentally changes the nature of her claim to distinguish it from her copyright infringement claim because it relies on the unauthorized use of her Work as support. (Doc. 1 at 9.) Like the tortious interference claim presented in *Harper*, Peterman's intentional interference with

-19-

prospective economic advantage claim alleges a violation of essentially the same exclusive rights provided for by federal copyright law. The Copyright Act already protects the exclusive right of distribution. Consequently, Peterman's state law claim is preempted.

Peterman has not identified an independent theory of interference with economic advantage apart from RNC's unauthorized use of the Work that would allow her to plead it outside of federal copyright law. The Complaint does not contain any specific facts regarding any economic advantage Peterman had that was damaged by RNC's use of the Work outside of the alleged infringement. (Doc. 1 at 9.) Further, the Complaint fails to include facts suggesting that it was plausible that RNC's actions were calculated to cause damage to Peterman's photography business or that RNC's actions resulted in actual damage or loss to state a claim for intentional interference with prospective economic advantage. (*Id.*) To any extent Peterman's claim is not preempted by federal copyright law, Peterman has additionally failed to state a claim for relief. Thus, RNC's Motion to Dismiss on Count II is granted.

Accordingly, IT IS ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7) is GRANTED IN PART and DENIED IN PART. Defendant's Motion to Dismiss Count I is DENIED and Defendant's Motion to Dismiss Count II is GRANTED.

-20-

DATED this 19th day of March, 2018.

Dana L. Christensen, Chief Judge
United States District Court