Erin M. Erickson
BOHYER, ERICKSON, BEAUDETTE & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana 59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email: mail@bebtlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

---

| | |
|---|---|
| ERIKA PETERMAN, | ) |
| | ) Cause No. CV-17-00066-M-DLC |
| Plaintiff, | ) |
| | ) THE HON. DANA L. CHRISTENSEN |
| -vs.- | ) |
| | ) **PLAINTIFF'S PRELIMINARY** |
| REPUBLICAN NATIONAL COMMITTEE, | ) **PRETRIAL STATEMENT** |
| | ) |
| Defendant. | ) |

---

Plaintiff Erika Peterman submits the following preliminary pretrial statement pursuant to the Court's Order dated April 27, 2018 and L. R. 16.2(b)(1).

### A. FACTUAL OUTLINE OF THE CASE

In early 2017, Peterman was contacted by the Montana Democratic Party to take photographs of the annual Mansfield-Metcalf Dinner in Helena, Montana.

Peterman agreed to be paid $500.00 to photograph the event. However, there was no discussion as to further licensing fees. Often times Peterman will photograph an event for a nominal amount because she understands that depending on the event and people present, she may capture stock photos that have a high monetary value. The $500.00 paid to her does not reflect the sum value of each photograph she took, nor is it considered a licensing fee for photographs.

On March 18, 2017, Peterman took photographs at the annual Mansfield-Metcalf Dinner. At that time, a special election was underway in Montana and receiving relatively greater national attention. Peterman was asked to photograph the Democratic candidate, Rob Quist, who was a focus of the event, along with other high profile national politicians.

After processing the photographs, Peterman delivered them to the Montana Democratic Party on March 21, 2017. Her method of delivery was an upload of the images to a secure website that only she and the client could access. The photograph at issue was titled, Erika Peterman-87 (the "Work") and depicted the back of Rob Quist's head and his iconic cowboy hat as he looked towards an otherwise dark background with three stage lights in the distance. Peterman gave a limited license only to the Montana Democratic Party and to Rob Quist to use the Work. Peterman retained ownership of the Work's copyright of all other uses

and subsequently registered the Work with the U.S. Copyright office on May 12, 2017.

On May 9, 2017, Peterman was notified that the RNC had widely distributed anti-Quist direct mailers (the "Mailers"), which featured her Work. The front of the Mailers featured a high resolution copy of the Work, with an anti-Quist byline placed in approximately the lower left quadrant. This byline stated, "For Montana conservatives, liberal Rob Quist can't hit the right note." The back of the Mailers contained standard political advertisement disclaimer language that they were paid for by the RNC and were not authorized by any candidate or candidate's committee. *Id*.

On May 11, 2017, the RNC officially stated to the Missoulian newspaper that the photograph on the mailer was a "screen grab" from a Rob Quist promotional video, yet the RNC failed to provide the correct video in which the "screen grab" was taken. Further, Rob Quist's campaign has never used the subject Work in any promotional videos.

**B.    JURISDICTION AND VENUE**

There are no issues concerning jurisdiction and venue.

## C. FACTUAL AND LEGAL THEORY UNDERLYING EACH CLAIM OR DEFENSE

### a. Count 1: Copyright Infringement

Peterman is the author and owner of a valid copyright of the photograph she took of Rob Quist (the Work), which is the subject of U.S. copyright registration. The RNC has infringed Peterman's copyright in the mailer by distributing it widely through mass direct mailings. By the RNC's own admission, the image used in the RNC mailer is a copy of Peterman's Work.

The RNC did not have the authorization of Peterman, or the law, to reproduce, distribute, display or create derivative copies of the Work. The RNC did not, and has not, compensated Peterman for reproducing, displaying and distributing her Work.

Further, The RNC's use of the Work does not constitute a fair use under federal copyright law. The Copyright Act provides that the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means . . . for purposes such as criticism, comment, news report, teaching, . . . scholarship or research, is not an infringement of copyright." 17 U.S.C. § 107. To determine "fair use," courts consider factors such as (1) purpose and character of the use, including whether the use is commercial or for nonprofit

educational purposes; (2) nature of the copyrighted work; (3) amount and substantiality of the portion of the work used in relation to the work as a whole; and (4) effect of the use on the potential market for or value of the work. The parties have fully stated their factual and legal positions on the fair use defense in the briefing surrounding the RNC's Motion to Dismiss. It remains Peterman's position that fair use is not a defense and the RNC's conduct was wilful.

As a result of the RNC's wilful conduct, it violated Peterman's exclusive rights granted in 17 U.S.C. §106. The RNC has realized, and continues to realize, benefits rightfully belonging to Peterman for the Work. Peterman has been damaged by the RNC's infringement. As a result of the RNC's infringement of Peterman's copyright and exclusive rights under copyright, Peterman is entitled to either actual or statutory damages, pursuant to 17 U.S.C. §504, with respect to the infringed-upon Work. Peterman is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. §505.

### b. Intentional Interference with Prospective Economic Advantage.

This claim has been dismissed by the Court.

### D. COMPUTATION OF DAMAGES

As an initial matter, Peterman's action for statutory damages is timely under 17 U.S.C. § 412(2) which provides that statutory damages are available for all

infringements of copyrights registered within three months after the first publication of the work.  Here, the RNC's infringement occurred on May 9, 2017, which was after Peterman had first published the Work via a limited license with the Montana Democratic Party on March 21, 2017; and Peterman registered her copyright for the Work on May 12, 2017, which was within the statutory window of three months after publication.

The court has wide discretion in determining the amount of statutory damages to be awarded within the ranges provided by 17 U.S.C. § 504(c)(1)-(2). *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  The court is directed to do "what is just in the particular case, consider the nature of the copyright, the circumstances of the infringement and the like . . . but with the express qualification that in every case the assessment must be within the prescribed [statutory range]." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232, 83 S. Ct. 222, 225 (1952).  Within these limitations, the court's discretion and sense of justice are controlling.  *Id.*  "Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant.'" *L.A. News Serv. v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).  If a

plaintiff demonstrates that the infringer's conduct was willful, the court may award maximum statutory damages of $150,000.00 per infringement. 17 U.S.C. § 504(c)(2).

Four factors determine the appropriate amount of statutory damages: (1) the infringer's profits and expenses saved because of the infringement; (2) the plaintiff's lost revenues; (3) the strong public interest in ensuring the integrity of copyright laws; and (4) whether the infringer acted willfully. See, e.g., *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 37611, at *6-7 (W.D. Wash. Mar. 20, 2014); *Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 U.S. Dist. LEXIS 15244, 2003 WL 22048519, at *2 (N.D. Cal. Aug. 20, 2003); *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987); *Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1530 (D. Mass. 1985),

Here, the RNC clearly profited from its infringement, not only by saving licensing fees, but from Peterman's lost revenue and any donations the RNC received in response to the Mailers. The RNC's infringing conduct, including falsely stating that it had obtained the Work through a "screen grab" of a nonexisting Quist campaign video, is sufficiently severe to justify a high statutory damages award. Specifically, "courts have repeatedly emphasized that defendants

must not be able to sneer in the face of copyright owners and copyright laws." *Getty Images*, 2014 U.S. Dist. LEXIS 37611, at *10 (citing *Tu v. TAD Sys. Tech. Inc.,* No. 08-CV-3822 (SlT) (RM), 2009 U.S. Dist. LEXIS 82410, 2009 WL 2905780, at *6 (E.D. N.Y. Sept. 10, 2009).

The arrogance of a large political organization such as the RNC infringing the copyright of a solo freelance photographer and fabricating an excuse for doing so would not be lost upon a finder of fact. These actions, combined with the fact that Peterman had issued limited licenses only to the Montana Democratic Party and Rob Quist indicate that the RNC infringed Peterman's copyright "willfully" and "with knowledge that [it] constituted copyright infringement." *Danjag LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001).

The per-infringement award escalates in direct proportion to the blameworthiness of the infringing conduct. *Id*. "Where defendants have ignored or disregarded notices of the need for licensing, willful infringement has been found." *Street Talk Tunes v. Vacaville Recreation Corp*., No. CIV S-05-2401FCDJFM, 2006 U.S. Dist. LEXIS 20941, 2006 WL 2423429, at *2 (E.D. Cal. 2006). A maximum statutory award would alert similar copyright infringers that they may not "sneer in the face of . . . copyright laws" without facing consequences. *Tu*, 2009 U.S. Dist. LEXIS 82410, 2009 WL 2905780, at *6.

Thus, it is in the public interest to protect the copyright system by awarding Peterman maximum statutory damages. Additionally, attorney fees are recoverable in this action under 17 U.S.C. § 505. District courts may "freely award fees, as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives." *Id.* at 378-79.

E.  **PENDENCY OR DISPOSITION OF ANY RELATED STATE OR FEDERAL LITIGATION**

   None.

F.  **ADDITIONAL PROPOSED STIPULATION OF FACT AND THE PARTIES UNDERSTANDING AS TO WHAT LAW APPLIES**

   1.  Aside from the limited license provided to the Montana Democratic Party and Rob Quist Campaign, Peterman retained ownership of the Work's copyright of all other uses.

   2.  On May 11, 2017, the RNC officially stated to the Missoulian newspaper that the photograph on the mailer was a "screen grab" from a Rob Quist promotional video.

   3.  The RNC has never provided the correct video in which the "screen grab" was taken.

   4.  Rob Quist's campaign has never used the subject Work in any promotional videos.

   5.  Federal substantive law applies to those claims brought under the Copyright Act.

**G. PROPOSED DEADLINE RELATING TO JOINDER OF PARTIES OR AMENDMENT OF PLEADINGS**

Peterman does not contemplate joining any additional parties. Peterman defers to this Court's proposed deadline for the joinder of parties or amendment of pleadings.

**H. IDENTIFICATION OF CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITIONS**

Peterman intends to file a motion for summary judgment on her Copyright Infringement Claim, and to address the RNC's claim of "fair use."

**I. STATUS OF SETTLEMENT DISCUSSIONS AND PROSPECT FOR COMPROMISE OF CASE**

The RNC opened up settlement discussions in July 2017 by offering $700 to fully settle the claim. On August 1, 2017, Peterman rejected that offer and based on statutory damages available, she offered to settle for $150,000, plus attorney fees. That offer was rejected and the RNC offered $2,500, plus attorney fees of approximately $6,000 to settle the case. Then, on September 19, 2017, Peterman offered to settle the entire claim for $75,000. The RNC rejected that offer and offered $5,000, plus up to $10,000 in attorney fees to resolve the case. On Friday, September 29, 2017 Peterman rejected that offer. No discussions took place until May 2018, after this Court's Order denying in part the RNC's motion to dismiss.

At that time, Peterman offered to settle her claim for $100,000. The RNC rejected that offer and indicated it was interested in continuing settlement discussions. However, the RNC's interest has never moved beyond offering what was outlined in its offer of judgment.

J.   **SUITABILITY OF SPECIAL PROCEDURES**

Peterman does not believe any special procedures are warranted in this matter.

DATED this 14th day of June, 2018.

                                        /s/ Erin M. Erickson
                                    Erin M. Erickson
                                    BOHYER, ERICKSON,
                                    BEAUDETTE & TRANEL, P.C.
                                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, a representative of the law firm of Bohyer, Erickson, Beaudette & Tranel, P.C., hereby certify that I served a true and complete copy of the foregoing on the following persons by the following means:

| | |
|---|---|
| __1-3__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk, U.S. District Court

2. Mark S. Williams, Esq.
   Williams Law Firm, P.C.
   235 E. Pine
   P.O. Box 9440
   Missoula, MT 59807-9440
   **Attorneys for Defendant**

3. David E. Weslow, Esq.
   Ari S. Meltzer, Esq.
   Wiley Rein LLP
   1776 K Street NW
   Washington, DC 20006
   **Attorneys for Defendant (*pro hac vice*)**

DATED this 14th day of June, 2018.

                                                /s/ Erin M. Erickson
                                                Erin M. Erickson
                                                BOHYER, ERICKSON,
                                                BEAUDETTE & TRANEL, P.C.
                                                *Attorneys for Plaintiff*